UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DONALD CHARLES SPEIRS,<br><br>Petitioner,<br><br>v.<br><br>JEFFREY A. UTTECH,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: C06-1543-JCC<br><br><br><br>REPORT AND RECOMMENDATION |

Petitioner Donald Charles Speirs proceeds *pro se* and *in forma pauperis* in this 28 U.S.C. § 2254 habeas action. (Dkt. 13.) He is in custody pursuant to a 1998 conviction by guilty plea of one count of Child Molestation in the First Degree. (Dkt. 27, Ex. 1.) Petitioner raises eleven grounds for relief in his habeas petition. (Dkt. 13.) Respondent filed an answer to the petition with relevant portions of the state court record. (Dkts. 22 & 27.) Respondent argues that petitioner failed to properly exhaust ten of his grounds for relief and that the one exhausted claim is both procedurally barred and lacking in merit. (Dkt. 22.) Petitioner disputes respondent's arguments in a reply. (Dkt. 29.) The Court has considered the record relevant to the grounds raised in the petition, including all hearing transcripts. For the reasons discussed herein, it is recommended that

petitioner's habeas petition be denied and this action dismissed.

I

On a visit to Washington from his home in Flagstaff, Arizona in 1997, petitioner fondled his granddaughter. (Dkt. 27, Ex. 5 at 2.) In January 1998, the Island County Prosecutor charged petitioner with one count of Child Molestation in the First Degree. (*Id.*, Ex. 6.) On July 24, 1998, petitioner pled guilty and was subsequently sentenced to sixty eight months confinement, with the confinement term suspended under the Special Sex Offender Sentencing Alternative (SSOSA). (*Id.*, Ex. 1 at 1, 6-7.) The trial court permitted petitioner to live and obtain the required sex offender treatment in Arizona. (*Id.*, Ex. 1 at 7.) In a subsequent resentencing hearing, the court deleted a twenty day confinement order and changed community supervision to community custody. (*Id.*, Ex. 2 at 7.) The court ordered the following conditions of the suspended sentence: (1) no contact with the victim until she reached eighteen years of age; (2) no possession or consumption of alcohol; (3) no possession or consumption of controlled substances unless prescribed by a physician; (4) submit to random physiological testing to ensure compliance; (5) undergo and successfully complete an outpatient sex offender treatment program with The Guidance Center in Flagstaff, Arizona for a period of three years; (6) shall not change sex offender treatment providers or treatment conditions without first notifying the prosecutor, community corrections officer, and the court; (7) shall not change treatment provider without court approval after a hearing if the prosecutor or community corrections officer object to the change; (8) have no contact with minors except in the presence of a responsible adult approved by the supervising authority; and (9) comply with all other conditions imposed by any other state correctional agency supervising petitioner, as well as the treatment agency. (*Id.* at 6-8.)

Petitioner applied for transfer of supervision under the Interstate Compact to his home state of Arizona, agreeing to comply with the conditions of probation as fixed by both Washington and Arizona. ( *Id*., Ex. 7.) Arizona imposed twenty one additional conditions, including that petitioner "not initiate, establish or maintain contact with any male or female child under the age of 18 or attempt to do so except under circumstances approved in advance and in writing by the probation officer." (*Id*., Ex. 8.)

In August 1999, petitioner's former counsel submitted a letter to the trial court, prosecutor, and petitioner's Washington Community Corrections Officer (CCO) advising that The Guidance Center had stopped providing sex offender treatment. (*Id*., Ex. 9.) The letter indicated petitioner's therapist at The Guidance Center, Konrad Kaserer, had established a private practice, where petitioner was continuing his treatment. (*Id*.)

In a December 14, 2000 group therapy session, petitioner admitted to inappropriate sexual behavior with an eighteen-year-old female employee, including two instances of fondling and extensive deviant sexual fantasies. ( *Id*., Ex. 10.) Because this behavior violated his treatment contract, Kaserer dismissed petitioner from the sex offender treatment program. (*Id*.) Petitioner subsequently enrolled in a sex offender treatment program with another provider, Sondra Wilkening. (*Id*., Ex. 11.)

In January 2001, petitioner was arrested and charged with five counts of sexual abuse for intentionally and knowingly engaging in sexual contact with persons fifteen or more years of age between October and November 2000, including the aforementioned eighteen-year-old female employee. (*Id*., Exs. 12-14.) In December 2001, a jury found petitioner guilty of three counts of sexual abuse and the Arizona trial court sentenced him to three years of imprisonment. (*Id*., Ex.

15.)

The State of Washington filed a Motion and Order to Show Cause alleging petitioner violated the conditions of his sentence by: (1) failing to successfully complete an Outpatient Sex Offender Treatment Program; (2) failing to notify the prosecutor and Court and gain prior approval of the Court to change Sex Offender Treatment Providers; (3) and failing to maintain "no contact" with any male or female child under the age of eighteen or attempt to do so with approval in advance by the probation officer. (*Id.*, Ex. 16.) The State dropped a fourth allegation that petitioner contacted his victim granddaughter after the victim's father attested there had been no such contact. (*Id.*, Ex. 4 at 3 and Ex. 17 at 43-44.)

Upon completion of his Arizona sentence, petitioner was extradited back to Washington. The state court held a revocation hearing on December 11, 2003. (*Id.*, Ex. 17.) The court found that petitioner failed to make satisfactory progress in treatment and willfully violated the conditions of his sentence. ( *Id.*, Ex. 4 at 4-5 and Ex. 17 at 77-79.) The court revoked the suspended sentenced and ordered petitioner to serve his sixty eight month sentence with credit for time served beginning in August 2003. (*Id.*, Ex. 4 at 5.)

Petitioner appealed the revocation. (*Id.*, Ex. 5.) His counsel raised the following grounds for review:

> 1. The revocation court failed to afford appellant his right of allocution.
>
> [Where the revocation court made the violation determination and revoked appellant's SSOSA at the same time – and without affording appellant the opportunity to speak – should this Court remand for a new revocation hearing before a different judge?]
>
> 2. The trial court erred in finding that the violations of the conditions of sentence were willful. . . .

> [Was the evidence insufficient to support the court's factual findings that appellant *willfully* violated the conditions that he obtain prior written approval for any contact with minors and that he notify the court and prosecutor before changing treatment providers?]
>
> 3. The trial court erred in entering finding of fact 5 and conclusions of law 2 and 3. [footnote: Although labeled conclusions of law, this Court should treat them as findings of fact. State v. CLR, 40 Wn. App. 839, 843 n. 4, 700 P.2d 1195 (1995) (treating factual assertion improperly labeled as a conclusion of law as a finding of fact).]

(*Id.* at 1.) The Washington Court of Appeals certified the following issue to the Washington Supreme Court: "Whether the statutory right to allocution applies in a proceeding where the court revokes the conditional suspension of a sentence imposed pursuant to the Special Sex Offender Sentencing Alternative." (*Id.*, Ex. 20.)

The Commissioner of the Washington Supreme Court accepted certification and consolidated petitioner's case with two other cases. ( *Id.*, Ex. 21.) The court ultimately concluded:

> The right of allocution is not an independent constitutional right. In Washington, the right of allocution at sentencing is statutory. A revocation hearing is not a sentencing hearing for purposes of the statutory right of allocution. However, we recognize a limited right of allocution based upon the common law right of allocution and the minimal due process requirements at revocation hearings. Thus, while allocution itself is not a right of constitutional magnitude, the constitutional "right to be heard in person" includes a right to allocution if the defendant requests it. Since we generally do not hear such claims of error for the first time on appeal, none of the defendants here are entitled to relief.

(*Id.* at 12.) (*See also id.*, Ex. 23 (amending opinion.)) The court issued its mandate on September 26, 2005. (*Id.*, Ex. 24.)

II

Petitioner here challenges the trial court's revocation of his suspended SSOSA sentence.

He raises the following grounds for relief:

1. Due Process rights were denied when judge failed to invite allocution prior to imposing sentence.

2. Fifth amendment double jeopardy clause was violated with respect to the duration of the sentence imposed. . . . Evidence was insufficient for finding of "willful" violation of conditions of probation.

3. Confrontation clause of the Sixth amendment regarding disputed facts of pre-sentence report.

4. Denial of Due Process and Confrontation clause of Sixth amendment. Was shakled [sic] during revocation hearing.

5. Liberty interest Fourteenth amendment, Proceederual [sic] Due Process. Was denied Arizona confinement time from February 2001 to August 2003, even though Washington Dept. of Corrections had placed a HOLD on May 16, 2001, and amended it August 24, 2001. HOLD remained in place during Incarceration in Arizona. and, [sic] was used to insure my return to Washington State at the end of Arizona incarceration. Credit should have been given for 30 months of incarceration.

6. Was deprived of Due Process when prosecuted for conduct where I was not given fair notice by supervising Arizona Adult Probation officer that my telephoning my minor grand children was a violation of probation. He was given a LOG of my activities and never commented that it was a violation.

7. Eight [sic] Amendment prohibits the imposition of a sentence that is grossly disproportionate to severity of offense. 68 months versus at most 120 days at Revocation hearing when finding of fact did not support the longer sentence.

8. Confinement violates my constitutional right to liberty in that Washington State Sentence Reform Act, specifically RCW 9.94A120 (VI) "The court may revoke the suspended sentence if (B) The Court finds that the defindent [sic] is failing to make satisfactory progress in treatment." There is lack of sufficient guidelines to prevent arbitrary and discriminatory enforcement. Without specific definition in the aforementioned Sentence Reform Act as to what constitutes "Satisfactory Progress in Treatment" many courts as well other State agents have applied there own definiations [sic] to their own ends, and not in the interest of justice.

9. Violation of my Sixth Amendment rights. (Poorly seatled [sic] area of law.) My probation violation was alleged to happen in another state, (Interstate Compact) Arizona Adult Probation (Agent of Washington) did not allege any violations of either Washington State or Arizona State rules regarding terms of probation. Washington State D.O.C. alleged that certain ARIZONA rules were violated. A hold was placed, and subsequently transported via California, and Oregon to Washington. No hearing was allowed in the community and state where violations were alleged to happen. Local witnesses for and against defendant could not be confronted.

10. Due Process violated when Foreign judgement (Arizona) was converted to Washington counterpart in error. Crime in Arizona was titled "Sex Abuse" against an adult. (In many other jurisdictions this more often refered [sic] to as "Sexual Harassment.) [sic] The Washington counterpart is 4th degree assault with no sexual intent. An over zealous Dept. of Correction officer, and the County prosecutor labeled it "Another Molestation" raising it to the level of the original Washington offense. Since he did not rule on this issue, a reasonable person must conclude he used this incorrect conversion of a Foreign judgement in concluding defendant merited the implementation of total revocation, rather than the 60 day sentence per violation.

11. I have constitutional right to hold state to the original terms agreed to in exchange for my guilty plea. Terms of my agreed upon sentence were changed after the fact and without my knowledge. Pled guilty on July 24, 1998. Per plea agreement I was sentenced the same day to a standard range of 68 months, suspended upon conditions of SSOSA, which stipulated COMMUNITY SUPERVISION for 68 months. Community Custody was not part of the original agreement. . . .At the request of Dept. of Corrections and a supposed problem with Arizona supervision, the court issued an amended judgement and sentence on January 27, 1999 which suspended the 68 month sentence conditioned on a 68 month period of COMMUNITY CUSTODY. . . . The conditions and terms of Community Custody are more restrictive than those I agreed to be placed under with Community Supervision. . . . (Unkept plea bargain is basis for grant of habeas relief.)

(Dkt. 13 at 5-10(b).)

Respondent asserts that petitioner only properly exhausted his first ground for relief and that the remaining claims are unexhausted and now procedurally barred. Respondent further argues that petitioner's first ground for relief was expressly procedurally barred by the Washington

Supreme Court upon finding that petitioner failed to raise the claim at the trial court level, and that this claim otherwise lacks merit. The Court addresses respondent's exhaustion and procedural bar arguments first.

III

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," and, therefore, requires "state prisoners [to] give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A complete round of the state's established review process includes presentation of a petitioner's claims to the state's highest court. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994). However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004), *cert. denied* 125 S.Ct. 2975 (2005). *But see Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court

review that might otherwise have been available.")

Additionally, a petitioner must "alert the state courts to the fact that he was asserting a claim under the United States Constitution." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). "The mere similarity between a claim of state and federal error is insufficient to establish exhaustion." *Id.* (citing *Duncan*, 513 U.S. at 366). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

Pursuant to RCW 10.73.090, no petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than a year after the judgment becomes final. Additionally, if the state court expressly declined to consider the merits of a claim based on an independent and adequate state procedural rule, or if an unexhausted claim would now be barred from consideration by the state court based on such a rule, a petitioner must demonstrate a fundamental miscarriage of justice, or cause, *i.e.* some external objective factor that prevented compliance with the procedural rule, and prejudice, *i.e.* that the claim has merit. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).

In this case, petitioner failed to exhaust his second through eleventh grounds for relief by failing to present them to any Washington court. Although petitioner did present an insufficiency of the evidence claim to the Washington Court of Appeals, he did not raise this issue as a double jeopardy claim, as he does here in ground two, or as any other type of federal constitutional claim. (*See* Dkt. 27, Ex. 5 at 1, 13-17.) Instead, he based the claim solely on state law. (*Id.*) Moreover, because petitioner's judgment and sentence became final for state purposes one year after the

September 26, 2005 state court mandate, these unexhausted claims are now procedurally barred.

In his habeas petition, petitioner appears to argue cause for his failure to pursue some of his claims, asserting various grounds for relief were either preserved by objecting, "just discovered", or preserved in being noted to the appellate court. (*See* Dkt. 13 at 11.) In his reply, petitioner appears to argue that the denial of his allocution right prevented him from pursuing other constitutional issues and, possibly, that his status as a sex offender interfered with his ability to freely communicate with his attorney. (*See* Dkt. 29 at 2, 4.)

None of these arguments excuse petitioner's procedural default. Petitioner cannot rely on an objection at the revocation hearing or a notation to the appellate court to preserve a claim for habeas relief. Instead, as stated above, exhaustion requires the pursuit of a federal constitutional claim through a complete round of the state's appellate review process. Also, although cursorily asserting that certain claims were "just discovered", petitioner fails to demonstrate that some external objective factor prevented his compliance with the filing deadline. Additionally, it is not clear how the denial of allocution could have prevented petitioner from later raising claims on appeal, and petitioner's possible argument regarding his sex offender status and his attorney is no more than conclusory. Because petitioner fails to demonstrate cause for his procedural default, the Court need not determine whether he demonstrates actual prejudice. *See Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).

The Court also takes note of respondent's argument that, because the Washington Supreme Court found petitioner's first ground for relief expressly procedurally barred based on his failure to object at trial, he may not pursue this claim here without a showing of cause and

prejudice from the default or a miscarriage of justice. *See Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995). As noted by respondent, federal courts have refused to consider claims on this basis. *See, e.g.*, *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (petitioner conceded attorney failed to object to issue at trial; finding review barred by independent and adequate state grounds where state court found issue waived because defense counsel consented to trial court's handling of issue); *Bonin*, 59 F.3d at 842-43 (declining to address procedurally barred claim where state court found petitioner failed to raise an objection at trial and petitioner failed to demonstrate cause for his failure to object, actual prejudice, or that a fundamental miscarriage of justice would result from barring the claim). In this case, the state court declined to hear the allocution claim because it was raised for the first time on appeal (Dkt. 27, Ex. 22 at 10-12) and plaintiff fails to establish cause and prejudice or a miscarriage of justice. However, the Court finds it worthwhile to address respondent's alternative argument that this ground for relief lacks merit. Accordingly, having considered the issue of exhaustion and a procedural bar, the Court directs its attention to the merits of petitioner's first ground for relief.

IV

This Court's review of the merits of petitioner's claim is governed by 28 U.S.C. § 2254(d)(1). Under that standard, the Court cannot grant a writ of habeas corpus unless a petitioner demonstrates that he is in custody in violation of federal law and that the highest state court decision rejecting his grounds was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(a) and (d)(1). The Supreme Court holdings at the time of the state court decision will provide the "definitive source of clearly established federal law[.]" *Van Tran*

*v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003). A state-court decision is contrary to clearly established precedent if it "'applies a rule that contradicts the governing law set forth in'" a Supreme Court decision, or "'confronts a set of facts that are materially indistinguishable'" from such a decision and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Petitioner's first ground for relief asserts a due process violation in the trial court's failure to invite allocution in his revocation hearing. As reflected above, the Washington Supreme Court determined that while there is no independent constitutional right to allocution, a limited right of allocution exists in a revocation hearing if requested by the defendant. (Dkt. 27, Ex. 22 at 9-12.)

A criminal defendant in Washington has a statutory right to allocution prior to sentencing in a revocation hearing. *State v. Beer*, 93 Wn. App. 539, 546, 969 P.2d 506 (1999); RCW 9.94A.500(1)).[1] However, as noted by the Washington Supreme Court in this case (Dkt. 27, Ex. 22 at 4, 10), the United States Supreme Court has never announced the existence of a constitutional right of allocution. *See Hill v. United States*, 368 U.S. 424 (1962).

In *Hill*, the Supreme Court addressed a situation in which a sentencing judge failed to ask a defendant whether he wished to speak prior to sentencing in violation of Rule 32 of the Federal Rules of Criminal Procedure. *Id.* at 425. The Court held that:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not itself an error of the character

---

[1] A similar right exists under the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii) (providing a right of allocution prior to sentencing); Fed. R. Crim. P. 32.1(b)(2)(E) (providing a right of allocution in revocation hearings).

> or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

*Id.* at 428 (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). The Court limited its holding to the context of that case, stating:

> [W]e are not dealing here with a case where the defendant was affirmatively denied an opportunity to speak during the hearing at which his sentence was imposed. Nor is it suggested that in imposing the sentence the District Judge was either misinformed or uninformed as to any relevant circumstances. Indeed, there is no such claim that the defendant would have had anything at all to say if he had been formally invited to speak. Whether [habeas] relief would be available if a violation of Rule 32(a) occurred in the context of other such aggravating circumstances is a question we therefore do not consider.

*Id.* at 429.

After *Hill*, several circuits, including the Ninth Circuit, held that when a defendant affirmatively requests to speak to the court before sentencing and is denied that request, he has not received due process. *See, e.g., Boardman v. Estelle*, 957 F.2d 1523, 1529-30 (9th Cir. 1992); *Ashe v. North Carolina*, 586 F.2d 334, 336 (4th Cir. 1978). As noted by respondent, a multitude of other courts have held to the contrary. (*See* Dkt. 22 at 21-22.)

Regardless of the persuasive authority of the Ninth Circuit's law, the United States Supreme Court has never recognized the existence of a constitutional right of allocution. Petitioner therefore cannot prevail on this claim. Moreover, even if this Court were to hold that such a right exists, there was no violation in this case. In *Boardman*, the Ninth Circuit limited its holding to cases in which a defendant requested and was denied permission to speak to the trial court before sentencing. 957 F.2d at 1530. Here, petitioner did not make such a request or

otherwise demonstrate "aggravating circumstances that might raise his claim to the level of a constitutional deprivation." *United States v. Carper*, 24 F.3d 1157, 1159 (9th Cir. 1994) (finding petitioner's claim limited to the narrow issue of whether the district court violated Rule 32 by failing to ask him whether he had anything to say prior to sentencing, where petitioner did not request permission to speak or present any of the other circumstances identified by the Supreme Court in *Hill*) (citing *Hill*, 368 U.S. 424 (noting defendant did not request an opportunity to speak, suggest that the district judge was uninformed as to relevant circumstances, and did not claim he would have had anything to say)).

For the reasons described above, petitioner fails to establish that he is in custody in violation of federal law and that the state court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law. As such, his first ground for relief should be denied.

V

Petitioner's habeas petition should be denied and this action dismissed. A proposed Order of Dismissal accompanies this Report and Recommendation. No evidentiary hearing is required as the record conclusively shows petitioner is not entitled to relief.

DATED this 14th day of March, 2007.

Mary Alice Theiler
United States Magistrate Judge